UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 99 WALL DEVELOPMENT INC.,<br><br>                 Plaintiff,<br><br>-against-<br><br>ALLIED WORLD SPECIALTY INSURANCE COMPANY f/k/a DARWIN NATIONAL ASSURANCE COMPANY,<br><br>                 Defendant. | Civil Action No.<br><br><br>January 8, 2018 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, 99 Wall Development Inc. ("99 Wall"), by and through its attorneys, Saxe Doernberger & Vita, P.C., alleges as follows:

## PARTIES

1. The Plaintiff, 99 Wall, is a corporation organized and existing under the laws of the State of New York, with its principal place of business located in New York, New York.

2. Upon information and belief, the Defendant, Allied World Specialty Insurance Company f/k/a Darwin National Assurance Company ("Allied"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Connecticut.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, et seq., in that the Plaintiff and Defendant are citizens of different states, the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue in this District is proper, as a substantial part of the events or omissions giving rise to the claim that is the subject of this Complaint occurred in this District including, but not limited to, Allied issuing a commercial property insurance policy that insures the construction project in this District that is the subject of this dispute, the insured is domiciled in this District, and the insured losses that are the subject of this dispute occurred in this District.

## FACTUAL ALLEGATIONS

### The Project and Water Losses

5. 99 Wall is the developer and owner of the construction project located at 99 Wall Street in Manhattan, New York (the "Project").

6. The Project consisted of the conversion of a 29-story office building into residential condominiums.

7. On July 29, 2016 and October 6, 2016, the Project sustained water damage from two separate and unrelated water losses (collectively the "Water Losses").

8. The July 29, 2016 water loss involved water intrusion into a portion of the Project.

9. The July 29, 2016 water loss caused property damage to, among other things, a controller for the Project's elevators.

10. The October 6, 2016 water loss occurred on the 25th floor of the Project.

11. The October 6, 2016 water loss caused property damage to various condominium units and the building's common areas.

12. The Water Losses required extensive remediation of the Project and caused the Project to be delayed beyond its projected completion date.

**The Insurance Policy**

13. Allied issued a Commercial Inland Marine Property insurance policy to 99 Wall for the period of August 22, 2014 to March 22, 2016 bearing policy number 0309-1656 (the "Policy"). The Policy is attached hereto as Exhibit A.

14. The Policy's insurance coverage was extended through April 30, 2017.

15. 99 Wall is an insured under the Policy.

16. Pursuant to the Policy, Allied promised to insure 99 Wall against "direct physical loss or damage caused by a covered peril to 'buildings or structures' while in the course of construction, erection, or fabrication."

17. "Buildings or structures" is defined within the Policy as the following: a) buildings; b) structures; c) materials and supplies that will become a permanent part of the buildings or the structures; and d) foundations, excavations, grading, filling, attachments, permanent fencing, and other permanent fixtures.

18. Water is a covered peril under the Policy.

19. The Policy contains a Delay in Completion Coverage Part that covers "delay" in completion of the Project, with "delay" defined within the Policy as "an interruption in the construction, erection, or fabrication of a 'building or structure' caused by a covered peril."

20. The Delay in Completion Coverage Part of the Policy also covers "Additional Construction Expenses" incurred during the "delay period."

21. "Delay period" is defined within the Policy as "the period of time the completion of the construction, erection, or fabrication of a covered 'building or structure' is 'delayed' as a result of direct physical loss or damage caused by a covered peril to property covered under the Builders' Risk Coverage form to which this coverage part is attached. This is not limited by the expiration date of the Policy."

22. "Additional Construction Expenses" is defined within the Policy as "necessary and reasonable expenses relating to the construction, erection, or fabrication of a covered 'building or structure' that are over and above those expenses that would have been incurred had there been no 'delay period.'"

23. The Delay in Completion Coverage Part of the Policy also covers additional "Soft Costs" incurred during the "delay period."

24. "Soft Costs" is defined within the Policy as "the necessary and reasonable costs relating to the construction, erection, or fabrication of a covered 'building or structure' that are over and above those costs that would have been incurred had there been no 'delay period. . . .'"

25. The Delay in Completion Coverage Part of the Policy also covers "expenses incurred during the 'delay period' that are necessarily incurred by [99 Wall] for the purpose of expediting the repair or replacement of the part of the covered property that sustains direct physical loss or damage."

4

26. The Policy contains a Rehabilitation and Renovation Endorsement that covers "direct physical loss or damage caused by a covered peril to 'building materials' and 'existing buildings' that are part of [99 Wall's] rehabilitation or renovation project."

27. "Building materials" is defined within the Policy as "materials, supplies, attachments, and fixtures that: a. will become; or b. since the inception date of this policy, have become a permanent part of the rehabilitation or renovation of an 'existing building' or an extension of or addition to an 'existing building.'"

28. "Existing building" is defined within the Policy as "a structure or building constructed and standing prior to the inception of this policy and that will undergo renovation or rehabilitation.  An 'existing building' includes only those parts of a standing structure or a standing building that are intended to become a permanent part of the structure or building during and after construction, renovation, or rehabilitation.  An 'existing building' includes foundations, attachments, permanent fencing, and other permanent fixtures."

29. "Rehabilitation or renovation project" is defined within the Policy as "a project involving the construction, rehabilitation, or renovation of a structure or building by [99 Wall] or [99 Wall's] contractors or subcontractors."

30. The Policy also contains Claim Preparation Expense Coverage that covers "reasonable and necessary expenses for claim preparation expenses incurred by [99 Wall] at [Allied's] request to assist [Allied] in the determination of the amount of a covered loss."

31.     The Claim Preparation Expense Coverage limit language provides "[t]he most [Allied] pay[s] in any one occurrence for claim preparation expenses is the Claim Preparation Expense Limit described on the Claim Preparation Expense Schedule."

32.     The Claim Preparation Expense Limit described on the Claim Preparation Expense Schedule is $250,000.00.

**The Claims**

33.     As a result of the Water Losses, the Project sustained significant direct physical loss which required extensive remediation and repairs, and caused the Project to be delayed beyond its projected completion date.

34.     The Policy was in full force and effect at the time of the Water Losses and 99 Wall duly performed all of its conditions and obligations under the Policy.

35.     As a direct and proximate result of the Water Losses, 99 Wall suffered damages covered by the Policy including, but not limited to:

a. Construction costs to repair the direct physical loss caused by the Water Losses;

b. Additional construction costs and expenses to complete the Project, additional soft costs, and expenses to reduce the effect of the Water Losses;

c. Costs associated with delay in completion of the Project such as condominium unit buyer concessions, sales price depreciation on cancelled sales of condominium units, advertising and public relations costs, bank consultant costs, lender extensions, legal consultant costs, construction loan interest, real estate taxes, sales team expenses, insurance costs, and temporary office space expenses; and

d.  Costs and expenses associated with preparation of the claim and supporting information for the Water Losses submitted/to be submitted to Allied.

36. After the Water Losses occurred, 99 Wall timely submitted its claims to Allied for damages caused by the Water Losses.

### AS AND FOR A FIRST CAUSE OF ACTION (BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING)

37. 99 Wall repeats and re-alleges all of the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

38. The Water Losses, and all resulting damages, are covered under the Policy.

39. Allied has failed, refused and/or neglected to pay for the Water Losses and/or the majority of the damages arising from the Water Losses pursuant to the Policy and is in breach of its contractual obligations to 99 Wall.

40. Allied's breach of its obligations to 99 Wall under the Policy constitutes a breach of contract.

41. Allied's refusal to pay for the majority of the damages arising from the Water Losses under the Policy was otherwise wrongful, without just cause, and in violation and breach of the terms, and conditions of the Policy.

42. Allied's issuance of the Policy to 99 Wall created a contractual relationship between Allied and 99 Wall. Allied therefore was subject to the implied-in-law duty to act fairly and in good faith in order to not deprive 99 Wall of the benefits of the Policy.

43. Allied has not attempted in good faith to effectuate prompt, fair, and equitable payment of the Water Losses and/or the majority of damages arising from the

Water Losses despite the fact that coverage for the Water Losses, and all resulting damages, under the Policy has become reasonably clear.

44. Allied has repeatedly delayed payment of claims, required unreasonable and repeated documents supporting the claims as part of its investigation, made unreasonable settlement offers, denied coverage to legitimate claims, and otherwise acted in bad faith.

45. Allied's conduct in intentionally refusing to pay 99 Wall for all claims arising out of the Water Losses was malicious, fraudulent, oppressive, and otherwise reflected a conscious disregard of 99 Wall's rights.

46. Allied, by its bad faith refusal to pay for the entirety of the Water Losses, has breached the covenant of good faith and fair dealing.

47. By reason of the aforesaid wrongful actions by Allied, 99 Wall has been forced to retain counsel and commence this action against Allied and will be forced to undertake such other and further steps as are necessary to fully and adequately protect its interests.

48. By reason of the foregoing, 99 Wall has suffered, and continues to suffer, damages including, but not limited to, the total amount of damages caused by the Water Losses, loss of profits, interest from the date of the Water Losses, reasonable attorneys' fees and increased damages by reason of the conduct of Allied in regard to the Water Losses.

**WHEREFORE**, 99 Wall prays for the following relief:

(1) Judgment from this Court in favor of 99 Wall, and against Allied, in an amount equal to:

a. All of 99 Wall's costs and damages arising from the Water Losses;

b. Interest;

c. Consequential damages;

d. Reasonable attorneys' fees and costs in connection with this action; and

e. Such additional amounts as awarded by this Court based upon Allied's bad faith, and breach of the covenant of good faith and fair dealing, in an amount to be determined by this Court.

## JURY DEMAND

99 Wall demands a trial by jury on all issues so triable.

Dated: Trumbull, Connecticut
January 8, 2018

/s/Tracy Alan Saxe
Tracy Alan Saxe, Esq.
Bar No.: TS7211
tas@sdvlaw.com
Phillip A. Perez, Esq.
Bar No.: PP3085
pap@sdvlaw.com
Saxe Doernberger & Vita, P.C.
35 Nutmeg Drive, Suite 140
Trumbull, Connecticut 06611
Telephone: 203.287.2100
Fax: 203.287.8847
*Attorney for Plaintiff,*
*99 Wall Development Inc.*