

May 27, 2022

**VIA ECF**

Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square, Room 2203
New York, NY 10007

      **RE:**    99 Wall Development Inc. v. Allied World Specialty Insurance Company f/k/a Darwin National Assurance Company
              Civil Action No.: 1:18-cv-00126 (RA-KHP)
              Our File No.: 9-136-0020

Dear Judge Abrams:

We represent Plaintiff, 99 Wall Development Inc. ("99 Wall"), in the above referenced matter and write in response to Defendant's, Allied World Specialty Insurance Company ("Allied World"), letter dated May 24, 2022.[1] 99 Wall respectfully requests that the Court deny Allied World's request to file an additional motion for summary judgment. Allied World's proposed motion is time barred, unnecessary, and clearly only intended to further delay the resolution of this claim.

Nonetheless, 99 Wall consents to a reasonable extension of the pre-trial deadline. 99 Wall believes that thirty (30) days is sufficient for both parties to complete the activities of the pre-trial order but does not object to sixty (60) days.

Allied World claims that it only recently learned that 99 Wall's breach of contract claim includes Allied World's refusal to pay 99 Wall's full repair costs. Additionally, Allied World argues that there is an unresolved legal issue as to whether the Allied World Builders Risk policy at issue (the "Policy") provides coverage for certain repair costs, which 99 Wall categorized as "general conditions" at a settlement conference. However, 99 Wall has demanded payment for its repair costs since this litigation's inception, and the damages incurred are a purely factual question. In short, Allied World is attempting to dispute a legal issue that does not exist, and any additional summary judgment motion will only cause unfair, unnecessary, and wasteful delay.

      **A. Another Summary Judgment Motion Will Cause Unfair and Needless Delay**

This Court ordered that the parties file their summary judgment motions by September 14, 2020, almost 2 years ago.[2] Now, on the eve of the parties' pretrial deadlines and failed attempts to mediate the case to resolution, Allied World is

---

[1] See ECF No. 266.
[2] See Order at ECF No. 194.

requesting permission to file an additional summary judgment motion to address the Policy's definition of repair costs. Notably, Allied World relies on Alexidor v. Donahoe, 2017 WL 880879, at *3 (S.D.N.Y. Mar. 2, 2017) and Miller v. Terrillion, 436 F. Supp. 3d 598, 601 (E.D.N.Y. 2020) for the proposition that courts have granted leave to file an additional summary judgment motion in **similar circumstances**. The former involved a pro se plaintiff, in which the defendant was unable to discern the plaintiff's claim from the complaint. The latter involved a 1983 claim, in which the Court granted the defendant's request to file an additional summary judgment in light of a recent U.S. Supreme Court decision. Neither case is **similar** to the issue before the court.

To the contrary, as justification for its late filing, Allied World absurdly claims that it was unaware that 99 Wall is seeking reimbursement for its repair costs.[3] However, 99 Wall alleged in its complaint that it suffered damages, "including but not limited to: a. Construction costs to repair the direct physical loss caused by the Water Losses."[4] Likewise, the Court acknowledged in its September 29, 2021 Opinion & Order that 99 Wall's claim has two components: "costs to repair direct physical damage and costs related to delay in completion."[5] Allied World's unjustified "misunderstanding" is not a sufficient basis for this eleventh hour summary judgment motion.

The previous summary judgment motions were filed on the September 14, 2020 deadline and an order was not entered until September 29, 2021. Allied World's request that the parties brief another issue is part of its continued effort to delay the inevitable and subject 99 Wall to another year of litigation fatigue. Indeed, contrary to Allied World's assertion, another protracted round of summary judgment motions, almost 2 years after the filing deadline, will not "serve the interests of judicial economy" or "increase the likelihood of settlement."

Allied World's proposed motion for summary judgment will not narrow down the issues for trial. It merely seeks a determination as to how certain damages should be classified. Whether the damages are labeled as repair costs, or are categorized as delay damages, 99 Wall will still be able to present the damages to the jury at trial. If Allied World disagrees with the categorization of the damages, they can address the same at trial, without needlessly further delaying the same by engaging in unnecessary motion practice.

### B. Repair Costs are a Factual Issue

Allied World relies on inoperative language in the Policy's Builder's Risk Form to argue that there is a legal issue as to whether the Policy provides coverage for 99 Wall's repair costs. Allied World identifies an exclusion in the Builders Risk Form which precludes coverage for "a) general conditions[6], b) increased construction costs and additional construction expenses; c) increased overhead, increased material costs, and

---

[3] See Allied World's Letter Motion dated May 24, 2022 (ECF No. 266).
[4] See Plaintiff's Amended Complaint at paragraph 59 (ECF No. 28).
[5] 99 Wall Dev., Inc. v. Allied World Specialty Ins. Co., No. 18-CV-126 (RA), 2021 WL 4460638, at *3 (S.D.N.Y. Sept. 29, 2021).
[6] The Policy defines general conditions as costs associated with "a) utility charges; b) maintenance; c) facilities; d) communications; and e) administrative personnel." See, Policy at page 76.

increased labor costs; d) soft costs; and e) loss of earnings and loss of rental income."[7] However, in its letter to the Court, Allied World fully acknowledges that because the Policy's Builder's Risk Form did not provide sufficient coverage, 99 Wall purchased a separate Rehabilitation and Renovation Endorsement. The Rehabilitation and Renovation Endorsement provides expansive coverage that directly contradicts the exclusion in the base form.

Specifically, the Rehabilitation and Renovation Endorsement provides coverage for "direct physical loss or damage" on a replacement cost basis, and defines replacement costs as:

1. the necessary and reasonable **costs of materials and labor incurred to repair or replace**, without deduction for depreciation, the part of the "existing building" that sustains direct physical loss or damage;
2. the reasonable **overhead and profit** related to the "existing building" that sustains direct physical loss or damage but not to exceed the overhead and profit being charged for the "rehabilitation or renovation project" in accordance with the construction contracts; and
3. **other related construction costs and expenses that are re-incurred to repair or replace** the part of the "existing building" that sustains direct physical loss or damage but only if such costs have been included as part of the "limit" for a covered "rehabilitation or renovation project".[8]

The Court already identified that the Rehabilitation and Renovation Endorsement provides more expansive coverage than the Builder's Risk Form and that this endorsement provides the controlling language for the subject loss. Indeed, the Court explained:

> The Builder's Risk Form . . . does not cover "any standing 'building or structure' in the process of rehabilitation or renovation." Because the main Builder's Risk Form does not cover rehabilitation and renovation projects, 99 Wall purchased a separate Rehabilitation and Renovation Endorsement . . . The Builder's Risk Form also excludes "loss or damage caused directly or indirectly by a . . . delay in the completion of construction." To get around this exclusion, 99 Wall purchased delay-in-completion coverage, which is reflected in a separate endorsement.[9]

Admittedly, the Court did not directly address the conflict between the exclusion for certain repair costs in the base form and the expansive definition of replacement costs in the Rehabilitation and Renovation Endorsement. Nonetheless, the Court acknowledged that the Rehabilitation and Renovation Endorsement is the operative endorsement, provides more coverage than the Builder's Risk Form, and directly

---

[7] See Policy at Page 76.
[8] See Policy at Page 60.
[9] See Opinion & Order (ECF No. 252).

contradicts its exclusions. It is well settled law that where an insurance policy's endorsement conflicts with the base form, it is construed in favor of the insured.[10]

Allied World is attempting to relitigate basic issues and push this litigation backwards. While frustrating, it is unsurprising, given that Allied World has maintained the unreasonable position that the two major water losses that occurred near the completion of the project resulted in **zero** days delays. Allied World likely made this request on the eve of trial because it realizes that even if there is no delay, it is still required to reimburse 99 Wall for its repair costs. Allied world is only willing to entertain settlement negotiations if it requires paying a nominal amount or zero dollars.

### C. Allied World Mischaracterizes Deposition Testimony and this Court's Findings

At no time has this Court made a ruling regarding whether Allied World has paid 99 Wall's repair damages in full. The quotes used by Allied World in its request are taken out of context and are from the Court's opinion as to whether Allied World acted in bad faith – **not** whether Allied World properly reimbursed 99 Wall for all its repair costs. Allied World cites to the following language to improperly claim that the Court has ruled that there are no outstanding costs of repair:

- "Allied World has made payments for losses covered under the insurance policy—including the costs of repairing the water damage itself—99 Wall contends that Allied World was required to, but did not, compensate it for costs associated with delays to the project."[11]

The language cited to only states that Allied World "has made payments." 99 Wall does not dispute that some payments were made for repair costs. 99 Wall disputes that the repair costs were paid in full.

- "Allied World made a series of payments totaling over $2 million to 99 Wall to cover the physical damage caused by the water leaks. This litigation centers around the parties' disputes regarding to what extent the project was delayed by the water events, the methodology by which the delays ought to be measured…"[12]

Again, this language does not stand for the proposition that repair costs were made in full. Only that a series of payments were made, and that the primary focus of this litigation has been on delay costs.

---

[10] Thompson–Starrett Co. v. Am. Mut. Liab. Ins. Co., 276 N.Y. 266, 270, 11 N.E.2d 905 (1937)(Under New York law, "in construing an [e]ndorsement to an insurance policy the [e]ndorsement and policy must be read together and that the policy remains in full force and effect ***except as altered by the words of the [e]ndorsement***.") (emphasis added); see also First Roumanian Am. Congregation v. GuideOne Mut. Ins. Co., 862 F. Supp. 2d 293, 305 (S.D.N.Y. 2012) (holding that an endorsement that conflicts with a policy should be construed in favor of coverage and acknowledging that "it is well-settled law that where an insurer has drafted the policy, as here, 'any ambiguity in [the] ... policy should be resolved in favor of the insured.'") (Citation omitted).

[11] See ECF No. 252 at 1.

[12] Id. at 3.

4

- "By February 2017, four months after the second water event, Allied World had made payments totaling $2,396,000. But it did not pay for the delay costs, despite the repeated urging of 99 Wall that it needed those funds promptly."[13]

Again, this language does not indicate that repair costs were made in full, only that payments were made.

- "…the record shows that Allied World promptly investigated 99 Wall's claims,…paid the costs of repairing the water damage…"[14]

Not only were repair costs not at issue or the focus of this order, it clearly does not state that the costs of repair were paid in full. These statements only represent what 99 Wall has maintained throughout this litigation: that Allied World has made some payments on the costs of repair, but to date has not made any payments as to the delay damages.

Contrary to Allied World's contention, there is no outstanding question of policy interpretation, and the only remaining issue before the court is damages, which is a question of fact for a jury to decide.

As such, 99 Wall respectfully requests that this Court enter an Order denying Allied World's request to submit an additional Motion for Summary Judgment and grant Allied World's relief requested in the alternative providing the Parties an extension of time to submit the pretrial filings.

99 Wall thanks the Court for its time and consideration of this matter.

Defendant's request to file an additional motion for summary judgment is denied.

Plaintiff demanded payment for its repair costs in its First Amended Complaint, *see* Dkt. 28 ¶ 59, and Defendant had a full opportunity to move for summary judgment as to these costs in its initial motion. While the Court noted in its September 29, 2021 Opinion and Order that Defendant had made payments to Plaintiff for repair costs, it has never ruled on whether Defendant has paid those repair damages in full.

To the extent the parties dispute whether certain damages are properly considered repair costs or delay damages, they shall resolve the issue at trial.

SO ORDERED.

_____
Hon. Ronnie Abrams
06/14/2022

Respectfully submitted,

/s/ Stephanie A. Giagnorio
Stephanie A. Giagnorio, Esq.
sgiagnorio@sdvlaw.com
Saxe Doernberger & Vita, P.C.
999 Vanderbilt Beach Rd., Suite 603
Naples, FL 34108
T: (239) 316-7244
F: (203) 287-8847
*Attorneys for Plaintiff, 99 Wall Development Inc*

---

[13] Id. at 6.
[14] Id. at 26.